COVINGTON, Judge.
Defendant, James Earl Spikes, was charged by indictment with the murder of Lola Ratcliff on February 22,1973, in violation of LSA-R.S. 14:30. He pled not guilty and not guilty by reason of insanity. After a trial without a jury on motion of defendant’s court-appointed counsel, he was convicted of the crime charged and sentenced to life imprisonment at hard labor. Defendant, through the public defender’s office, has appealed this conviction and sentence. We affirm.
The basis upon which defendant seeks reversal is that he did not knowingly and intelligently waive his right to a jury trial, and that the deprivation of this right rendered his conviction and sentence null.
The right to a jury trial may be waived in a non-capital case pursuant to Article 1, § 17 of the 1974 Louisiana Constitution if the waiver is “knowingly and intelligently” made. The record shows that the trial judge made a sufficient effort to ascertain whether Spikes knowingly and intelligently waived a jury trial and that he understood the consequences of such a waiver. The record shows too that Spikes’ appointed-counsel at the accused’s side in open Court, “formally waive[d] his right to *731 a jury, to a trial by jury, and ask[ed] that this matter be tried by the judge alone.” The trial judge then asked: “All right. Is that correct, Mr. Spikes?” To this question Spikes responded, “Yes sir.” The trial then proceeded to conclusion without any objection on the part of defendant.[1]
The record supports the conclusion that the defendant was personally informed by the trial judge of his right to trial by jury before the waiver was accepted. State v. Long, 408 So.2d 1221 (La.1982). Thus, we are of the opinion that defendant made a knowing and intelligent waiver of his right to trial by jury within the principles of State v. Johnson, 389 So.2d 1302 (La.1980).
Accordingly, the conviction and sentence of James Earl Spikes are affirmed.
AFFIRMED.

. After his arraignment, Spikes was committed to the Forensic Unit of the East Louisiana State Hospital at Jackson, Louisiana, for tests and observation. He remained at the hospital until his return for trial. Dr. Otto Havas, staff psychiatrist at the hospital, certified to the court Spikes’ competency to stand trial “in that he understands the nature and consequences of the charge pending and can assist his attorney in his own defense.” The day before the trial, Spikes was re-examined by Dr. John D. Newman, who had served on the earlier sanity commission which had committed Spikes, and Dr. Newman found Spikes competent to stand trial. Dr. Newman testified that Spikes understood specifically his right to waive trial by jury and the consequences of being tried only by the judge.